# Exhibit A

**Tax Serial Number:**
    W-10E-4-57-A

**RECORDATION**
    **REQUESTED BY:**
      **AMERICANWEST BANK**
      **HOME LOAN CENTER**
      **9019 E APPLEWAY BLVD**
      **SPOKANE, WA  99212**

**WHEN RECORDED MAIL**
    **TO:**
      **AMERICANWEST BANK**
      **9019 E. APPLEWAY**
      **BLVD.**
      **SPOKANE, WA  99212**

**SEND TAX NOTICES TO:**
    **KENTON C. BOWLER**
    **AMY C BOWLER**
    **614 E REDSANDS DRIVE**
    **WASHINGTON, UT**
    **84780**                                     **FOR RECORDER'S USE ONLY**

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated January 28, 2008, together with all Riders to this document.
(B)   "Borrower" is KENTON C BOWLER and AMY C BOWLER; Husband and Wife. Borrower is the trustor under this Security Instrument.
(C)   "Lender" is AMERICANWEST BANK. Lender is a A WASHINGTON STATE CHARTER BANK organized and existing under the laws of Washington. Lender's address is HOME LOAN CENTER, 9019 E APPLEWAY BLVD, SPOKANE, WA 99212.
(D)   "Trustee" is Far West Bank a Division of AmericanWest Bank, Spokane, WA.
(E)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)   "Note" means the promissory note signed by Borrower and dated January 28, 2008. The Note states that Borrower owes Lender Seven Hundred Ninety-five Thousand & 00/100 Dollars (U.S. $795,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307                                                         **Page 2**

29, 2009.
(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider         ☐ Condominium Rider         ☐ Second Home Rider

☐ Balloon Rider                ☐ Planned Unit Development Rider   ☐ Other(s) [specify] _____

☐ 1-4 Family Rider            ☐ Biweekly Payment Rider

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M)   "Escrow Items" means those items that are described in Section 3.
(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the County of Washington:

    Real Property tax identification number is W-10E-4-57-A.

which currently has the address of 1049 E Paiute Dr., Washington, Utah 84780 ("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307                                                      Page 3

Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant, convey and warrant the Property and that the Property is unencumbered, except for encumbrances of record. Borrower further warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307                                                          Page 4

Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307                                                    Page 5

certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause,

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307                                                                  Page 6

Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307

Page 7

characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.   Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.   The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.   Borrower Not Released; Forbearance By Lender Not a Waiver.   Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307                                                      Page 8

Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307

Page 9

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307

Page 10

and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. In the event Borrower does not cure the default within the period then prescribed by Applicable Law, Trustee shall give public notice of the sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines (but subject to any statutory right of Borrower to direct the order in which the Property, if consisting of several known lots or parcels, shall be sold). Trustee may in accordance with Applicable Law, postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee

**DEED OF TRUST**
**(Continued)**

Loan No: 1900010307                                          Page 11

for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Request for Notices.** Borrower requests that copies of the notice of default and sale be sent to Borrower's address which is the Property Address.

**Occupancy.** Borrower shall not, without the prior consent of Lender, move into the residence.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                          _____(Seal)
                                                    KENTON C. BOWLER - Borrower

_____                          _____(Seal)
                                                    AMY C BOWLER - Borrower

─────────────── [Space Below This Line For Acknowledgment] ───────────────

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____              )
                                            ) SS
COUNTY OF _____              )

On this day before me, the undersigned Notary Public, personally appeared **KENTON C. BOWLER and AMY C BOWLER, Husband and Wife**, to me known to be the individuals described in and who executed the Deed of Trust, and acknowledged that they signed the Deed of Trust as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _____ day of _____, 20_____
_____.

By_____          Residing at_____

Notary Public in and for the State of_____          My commission expires_____

**DEED OF TRUST**

Loan No: 1900010307    (Continued)    Page 12

LASER PRO Lending, Ver. 5.39.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - UT/WA C:\HFS\LASERPRO\CFI\LPL\G01.FC TR-28203 PR-117

# **Exhibit B**

July 22, 2009

TO ALL INTERESTED PARTIES:

Enclosed are copies of the Substitution of Trustee and Notice of Default and Election to Sell recorded in the Office of the Washington County Recorder on July 21, 2009 as Entry Nos. 20090028269 and 20090028270 and affecting the real property located approximately at 1049 East Paiute Drive, Washington, Washington County, Utah 84780, and more particularly described as follows:

PARCEL 1:
ALL OF LOT FIFTY-SEVEN (57), INDIAN OAKS ESTATES SUBDIVISION PHASE 4, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE IN THE OFFICE OF THE RECORDER OF WASHINGTON COUNTY, STATE OF UTAH.

PARCEL 2:
A PARCEL OF GROUND ADJACENT TO LOT 57, INDIAN OAKS ESTATES SUBDIVISION PHASE 4, WASHINGTON, UTAH SAID PARCEL BEING SUBJECT TO A 15 FOOT CANAL EASEMENT AND A PUBLIC UTILITIES AND CANAL MAINTENANCE ACCESS EASEMENT. MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 57; THENCE NORTH 87°27'00'' WEST 229.46 FEET TO THE SOUTHWEST CORNER OF SAID LOT 57; THENCE SOUTH 12°51'20'' EAST 18.80 FEET TO THE NORTHERLY RIGHT OF WAY LINE OF PAIUTE DRIVE; THENCE SOUTH 87°27'00'' EAST 224.55 FEET ALONG SAID RIGHT OF WAY LINE; THENCE NORTH 0°02'52'' WEST 17.86 FEET TO THE POINT OF BEGINNING.

Our foreclosure report indicates that you may have an interest in the affected real property. As such, you may have rights under Utah law. At any time within three (3) months of filing for record of the Notice of Default, you may pay to Nathan S. Dorius, c/o STUCKI STEELE PIA ANDERSON & RENCHER, 299 S. Main Street, Suite 2200, Salt Lake City, Utah 84111, (801) 961-1300, the amounts then due under the terms of the Deed of Trust dated January 28, 2008 (the "Trust Deed") and the obligations secured thereby, including costs and trustee's and attorney's fees actually incurred, and thereby cure the default and all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and the Trust Deed shall be reinstated and shall be and remain in force and effect the same as if no acceleration had occurred.

Nathan S. Dorius, Trustee
STUCKI STEELE PIA ANDERSON & RENCHER
299 S. Main Street, Suite 2200
Salt Lake City, Utah 84111
Telephone: (801) 961-1300
Facsimile: (801) 961-1311

Enclosures

DOC #: 20090028269
Substitution of Trustee     Page 1 of
Russ... County Washington County Recorder
07/21/2009 02:49:19 PM Fee $ 10.00
By STUCKI STEELE PIA ANDERSON & RENCHER

**WHEN RECORDED, MAIL TO:**
Nathan S. Dorius
Stucki Steele Pia Anderson & Rencher
299 S. Main Street, Suite 2200
Salt Lake City, Utah 84111
(801) 961-1300

Parcel No. W-10E-4-57-A

## SUBSTITUTION OF TRUSTEE

NATHAN S. DORIUS, who is a member of the Utah State Bar and whose address is 299 S. Main Street, Suite 2200, Salt Lake City, Utah 84111, telephone no. (801) 961-1300, is hereby appointed successor trustee under that certain Deed of Trust dated January 28, 2008, executed by KENTON C. BOWLER AND AMY C. BOWLER, as Trustor, in favor of AMERICANWEST BANK, as Beneficiary and AMERICANWEST BANK, as Trustee (the "Trust Deed") and filed for recording on January 29, 2008 as Entry No. 20080003806 of Official Records of Washington County, Utah. The real property encumbered by the Trust Deed ("Trust Property") is commonly known as 1049 East Paiute Drive, Washington, Utah 84780, and more particularly described as set forth below:

PARCEL 1:
ALL OF LOT FIFTY-SEVEN (57), INDIAN OAKS ESTATES SUBDIVISION PHASE 4, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE IN THE OFFICE OF THE RECORDER OF WASHINGTON COUNTY, STATE OF UTAH.

PARCEL 2:
A PARCEL OF GROUND ADJACENT TO LOT 57, INDIAN OAKS ESTATES SUBDIVISION PHASE 4, WASHINGTON, UTAH, SAID PARCEL BEING SUBJECT TO A 15 FOOT CANAL EASEMENT AND A PUBLIC UTILITIES AND CANAL MAINTENANCE ACCESS EASEMENT. MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 57; THENCE NORTH 87°27'00" WEST 229.46 FEET TO THE SOUTHWEST CORNER OF SAID LOT 57; THENCE SOUTH 12°51'20" EAST 18.80 FEET TO THE NORTHERLY RIGHT OF WAY LINE OF PAIUTE DRIVE; THENCE SOUTH 87°27'00" EAST 224.55 FEET ALONG SAID RIGHT OF WAY LINE; THENCE NORTH 0°02'52" WEST 17.86 FEET TO THE POINT OF BEGINNING.

DATED this 15 day of July, 2009.

AMERICANWEST BANK

By: _____
Name: Dan Bost
Title: V.P.

STATE OF ____Utah____ )
                       ) : ss
COUNTY OF ___Utah___ )

The foregoing instrument was acknowledged before me this 15th day of July 2009, by Daniel Brian the V.P. of AmericanWest Bank.

_____
Notary Public

[Notary Seal: ROSEMARY HARWARD, NOTARY PUBLIC-STATE OF UTAH, COMMISSION# 577847, COMM. EXP. 12-29-2012]

# **Exhibit C**

WHEN RECORDED, MAIL TO:
Nathan S. Dorius
Stucki Steele Pia Anderson & Rencher
299 S. Main Street, Suite 2200
Salt Lake City, Utah 84111
(801) 961-1300

**DOC # 20090028270**
Notice of Default   Page 1 of 1
Russell Shirts Washington County Recorder
07/21/2009 03:49:19 PM Fee $ 18.00
By STUCKI STEELE PIA ANDERSON & RENCHER

Parcel No. W-10E-4-57-A

## NOTICE OF DEFAULT AND ELECTION TO SELL

NOTICE IS HEREBY GIVEN:

That NATHAN S. DORIUS, Successor Trustee, gives notice of default under that certain Deed of Trust dated January 28, 2008, executed by KENTON C. BOWLER AND AMY C. BOWLER, as Trustor, in favor of AMERICANWEST BANK, as Beneficiary, and AMERICANWEST BANK, as Trustee (the "Trust Deed") and filed for recording on January 29, 2008 as Entry No. 20080003806 of Official Records of Washington County, Utah. The real property encumbered by the Trust Deed ("Trust Property") is commonly known as 1049 East Paiute Drive, Washington, Utah 84780, and more particularly described as set forth below:

PARCEL 1:
ALL OF LOT FIFTY-SEVEN (57), INDIAN OAKS ESTATES SUBDIVISION PHASE 4, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE IN THE OFFICE OF THE RECORDER OF WASHINGTON COUNTY, STATE OF UTAH.

PARCEL 2:
A PARCEL OF GROUND ADJACENT TO LOT 57, INDIAN OAKS ESTATES SUBDIVISION PHASE 4, WASHINGTON, UTAH SAID PARCEL BEING SUBJECT TO A 15 FOOT CANAL EASEMENT AND A PUBLIC UTILITIES AND CANAL MAINTENANCE ACCESS EASEMENT. MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 57, THENCE NORTH 87°27'00'' WEST 229.45 FEET TO THE SOUTHWEST CORNER OF SAID LOT 57; THENCE SOUTH 12°51'20'' EAST 18.80 FEET TO THE NORTHERLY RIGHT OF WAY LINE OF PAIUTE DRIVE; THENCE SOUTH 87°27'00'' EAST 224.55 FEET ALONG SAID RIGHT OF WAY LINE; THENCE NORTH 0°02'52'' WEST 17.86 FEET TO THE POINT OF BEGINNING.

The Trust Deed secures obligations to Beneficiary including that certain Promissory Note, dated January 28, 2008 in the original principal amount of $295,000.00 (the "Note"). A default of the obligations under the Note has occurred, in that payments required by the Note have not been paid, plus all amounts which hereafter become due and payable, including any additional payments, interest, late fees, hazard insurance, property taxes, trustee's and attorneys' fees, and expenses (the "Obligations"). A full itemization of the Obligations may be obtained from Nathan S. Dorius at the above address and telephone number.

By reason of such default, the Trustee does hereby declare all sums secured by the Trust Deed immediately due and payable and elects to cause the Trust Property to be sold, pursuant to the Trust Deed and the laws of the State of Utah, to satisfy the Obligations.

DATED this 17th day of July, 2009.

TRUSTEE

Nathan S. Dorius
(801) 961-1300 (M-F 8:00 a.m. – 5:00 p.m.)

STATE OF UTAH        )
                     : ss
COUNTY OF SALT LAKE  )

The foregoing instrument was acknowledged before me this 17th day of July, 2009, by Nathan S. Dorius.

Notary Public

ALEXANDRIA STUCKI
Notary Public • State of Utah
Commission # 578018
My Commission Expires
March 9, 2013

# **<u>Exhibit D</u>**

## NOTICE OF TRUSTEE'S SALE

The following described property will be sold at public auction to the highest bidder, payable in lawful money of the United States, at the front entrance of the Fifth District Courthouse, Washington County, 220 North 200 East, St. George, Utah 84770 on Tuesday, December 8, 2009 at 3:30 p.m. of said day for the purpose of foreclosing the Deed of Trust dated January 28, 2008, executed by KENTON C. BOWLER AND AMY C. BOWLER, as Trustor, in favor of AMERICANWEST BANK, as Beneficiary, and AMERICANWEST BANK, as Trustee (the "Trust Deed") and filed for recording on January 29, 2008 as Entry No. 20080003806 of Official Records of Washington County, Utah.

The Substitution of Trustee appointing Nathan S. Dorius as successor trustee and Notice of Default and Election to Sell were filed for recording with the Washington County Recorder on July 21, 2009 as Entry Nos. 20090028269 and 20090028270.

Trustee will sell at public auction to the highest bidder without covenant or warranty as to title, express or implied, possession, condition or encumbrances, including fees, charges, and expenses of the Trustee and of the trusts created by said Trust Deed, to pay the remaining sums owing under the note secured by said Trust Deed, including delinquent property taxes, the real property situated in Washington County, Utah, described as follows:

PARCEL 1:
ALL OF LOT FIFTY-SEVEN (57), INDIAN OAKS ESTATES SUBDIVISION PHASE 4, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE IN THE OFFICE OF THE RECORDER OF WASHINGTON COUNTY, STATE OF UTAH.

PARCEL 2:
A PARCEL OF GROUND ADJACENT TO LOT 57, INDIAN OAKS ESTATES SUBDIVISION PHASE 4, WASHINGTON, UTAH SAID PARCEL BEING SUBJECT TO A 15 FOOT CANAL EASEMENT AND A PUBLIC UTILITIES AND CANAL MAINTENANCE ACCESS EASEMENT. MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 57; THENCE NORTH 87°27'00'' WEST 229.46 FEET TO THE SOUTHWEST CORNER OF SAID LOT 57; THENCE SOUTH 12°51'20'' EAST 18.80 FEET TO THE NORTHERLY RIGHT OF WAY LINE OF PAIUTE DRIVE; THENCE SOUTH 87°27'00'' EAST 224.55 FEET ALONG SAID RIGHT OF WAY LINE; THENCE NORTH 0°02'52'' WEST 17.86 FEET TO THE POINT OF BEGINNING. (Parcel No. W-IOE-4-57-A)

The sale is subject to a bankruptcy filing, a payoff, a reinstatement or any other condition of which the Trustee is not aware that would cause the cancellation of the sale. If any such condition exists, the sale shall be void, the successful bidder's funds returned and the Trustee and current beneficiary shall not be liable to the successful bidder for any damage.

The address of the property is purported to be 1049 East Paiute Drive, Washington, Utah 84780. The undersigned disclaims liability for any error in the address. The current beneficiary of the Trust Deed is Far West Bank. The purported owners of the property as of the recording of the notice of default are Kenton C. Bowler and Amy C. Bowler.

Bidders must be prepared to tender to the trustee a $5,000.00 cashier's check at the sale and a cashier's check for the balance of the purchase price within 24 hours after the sale.

THIS NOTICE IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

DATED: November 4, 2009.

NATHAN S. DORIUS, Trustee
Stucki Steele Pia Anderson & Rencher
299 S. Main Street, Suite 2200
Salt Lake City, Utah 84111
(801) 961-1300 (M-F 8:00 a.m. – 5:00 p.m.)

Publication dates: 11/9/2009   11/16/2009   11/23/2009

# **<u>Exhibit E</u>**



June 12, 2009

Mr. Kenton Bowler
Mrs. Amy C Bowler
1049 E Paiute Drive
Washington, UT 84780

Re:    Loan #1900010307

Kenton and Amy,

I received the documents you sent on or about June 5, 2009 that assert, among other things, that AmericanWest Bank/Far West Bank violated your rights by neglecting to provide you a 3 day right of rescission on the construction loan for your home in Washington, Utah.

Based on the claims in your documents, it is clear that you have a fundamental misunderstanding of the law pertaining to a borrower's right of rescission under the Truth in Lending Act and its implementing regulation, Regulation Z. You are correct that this statute and regulation provide a right of rescission to a consumer with respect to most loans when a security interest (i.e., mortgage or deed of trust) is taken in the consumer's principal residence. However, Regulation Z clearly states that the right of rescission does not apply to any loan made to finance the acquisition or initial construction of the consumer's residence. (The relevant sections of Regulation Z can be found in the Code of Federal Regulations at 12 C.F.R. 226.2(a)(24), and 226.23(f).) Your current loan was clearly for the acquisition and initial construction of your property and residence, so the right of rescission did not apply to your loan. The right of rescission may apply when you successfully refinance to pay off the current construction loan, but it simply did not apply to the current loan.

The documents you sent also indicate an unjustified reliance on various other "legal theories." You need to understand that we have the right, and we intend, to pursue all legal remedies available to collect the entire balance of your loan, including foreclosure, sale of your property and pursuit of a deficiency judgment against you for the balance remaining after the property is sold. We are concerned that your unfounded reliance on the right of rescission or other legal theories is going to result in you losing your home, when that result can most likely be avoided if you will cooperate with us. We have made every attempt to assist you in resolving this dilemma and we remain willing to work with you.

I strongly suggest that you obtain competent legal advice before continuing to rely on the claims or theories in the documents you sent us. And I invite you to contact me immediately to explore alternatives that would allow you to avoid foreclosure and a deficiency judgment.

I am available at any time to talk with you. Please call.

Sincerely,

Michael E Koch
SVP, Director of Residential Lending
AmericanWest Bank / Far West Bank
509-838-7155

# Exhibit F

**DEMAND FOR PRODUCTION OF FORENSIC ACCOUNTING DOCUMENTS
UNDER RULE OF     ) EVIDENCE 103 AND RULE 402**
Notice to Agent is Notice to Principal
Notice to Principal is Notice to Agent

Re:   AMERICANWEST BANK Loan No. 1900010307; Tax Serial # APN W-IOE-4-57-A;
      Commonly Known Address: 1049 East Paiute Drive, Washington, Utah [84780]; Deed of
      Trust Record: 20080003806 dated 1/28/2008 with a recorded date of 1/29/2008; and the

Legal Description:

**PARCEL 1:**
All of Lot Fifty-Seven (57), INDIAN OAKS ESTATES SUBDIVISION PHASE 4,
according to the Official Plat thereof, on file in the Office of the Recorder of Washington
County, State of Utah.

**PARCEL 2:**
A parcel of ground adjacent to lot 57, INDIAN OAKS ESTATES SUBDIVISION PHASE
4, Washington, Utah said parcel being subject to a 15 foot Canal Easement and a Public
Utilities and Canal Maintenance Access Easement More particularly described as follows:
Beginning at the Southeast Corner of said Lot 57; thence 87 27'00"West 229.46 feet to the
Southwest Corner of said Lot 57, thence South 12 51'20" East 18.80 feet to the Northerly
Right of Way line of Paiute Drive; thence South 87 27'00" East 224.55 feet along said
Right of Way line; thence North 0 02'52" West 17.86 feet to the Point of Beginning.

Pursuant Rules of Evidence Rule 103 and Rule 402 and Federal Rules of Civil Procedure Rule
34(b)(3)(A) for the following electronically stored documents:

NOTICE AND DEMAND FOR PRODUCTION OF THE FOLLOWING ITEMS

1.   The 2046 balance sheet as it relates to the original "loan" . . .  (OMB # 7100 0289) shows
     the banks' ledgering of the account. This document will show the off balance sheet entry
     and extinguishment of the "loan." This document is a mandatory filing pursuant to Title 12
     U.S.C. 248 & 347.

2.   An IRS form 1099 OID report (for original note and Mortgage) this will identify who the
     principal is from, which capital and interest was taken, and who the recipient or payer of
     the funds are, and who is holding the account in escrow, un-adjusted.

3.   An S3 A registration statement: This form is a U.S. Security and Exchange Commission

Registration Statement under the Securities Act of 1933 (OMB 3235-0073) that shows when and where the instrument was sold.

4.    424 B-5 prospectus (security filing). General Rules and Regulation under the Securities Act of 1933. This form is used in connection with a primary offering of securities pursuant to Rule 415(a)(1)(x).

5.    RC S & RC B call schedules as follows:

**General Instructions**

Schedule RC-S should be completed on a fully consolidated basis. Schedule RC-S includes information on 1-4 family residential mortgages and other financial assets serviced for others (in Memorandum items 2.a, 2.b, and 2.c). Schedule RC-S also includes information on assets that have been securitized or sold and are not reportable on the balance sheet of the Report of Condition, except for certain on-balance-sheet retained interest-only strips (which are reported in item 2.a of this schedule), subordinated securities and other enhancements (which are reported in items 2.b and 9 and Memorandum items 3.a.(1) and (2)), and seller's interests (which are reported in items 6.a and 6.b).

1.    Purchases of securities under agreements to resell and sales of securities under agreements to repurchase- These transactions are not to be treated as purchases or sales of securities but as lending or borrowing (i.e., financing) transactions  collateralized by these securities if the agreements meet the criteria for a borrowing set forth as FASB Statement No,140. Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities. For further information see the Glossary entries for "transfers of financial assets" and "repurchase/resale agreements."

6.    FASB (Financial Accounting Standards Board) part of GAAP (Generally Accepted Accounting Standards), which must be adhered to by a Federally Chartered Bank.

The FASB is not a governmental body. The SEC has legal authority to establish financial accounting and reporting standards for publicly held companies under the Securities Exchange Act of 1934. Throughout its history, however, Commission policy has been to rely on the private sector for this function to the extent that the private sector demonstrates ability to fulfill the responsibility in the public interest.

The FASB is part of a structure that is independent of all other business and professional organizations. Before the present structure was created, financial accounting and reporting standards were established first by the Committee on Accounting Procedure of the American Institute of Certified Public Accountants (1936–1959) and then by the

Accounting Principles Board, also a part of the AICPA (1959–73). Pronouncements of those predecessor bodies remain in force unless amended or superseded by the FASB.

The FASB is subject to oversight by the Financial Accounting Foundation (FAF), which selects the members of the FASB and the Governmental Accounting Standards Board and funds both organizations. The Board of Trustees of the FAF, in turn, is selected in part by a group of other organizations.

7.    FAS 125, 133, 140, 5, 95 documents that will direct the auditor to the liability side of the banks' books and also create the trail of exactly where the money came from and where it went.

a.    FAS 125: accounting for transfers and servicing of financial assets and extinguishment of liabilities. (Financial assets should be considered sold, and therefore should be de-recognized, if it is transferred and control is surrendered.)

b.    FAS 133 This Statement establishes accounting and reporting standards for derivative instruments, including certain derivative instruments embedded in other contracts, (collectively referred to as derivatives) and for hedging activities. It requires that an entity recognize all derivatives as either assets or liabilities in the statement of financial position and measure those instruments at fair value, etc. et. seq.

c.    FAS 140 The Financial Accounting Standards (FAS B) continues to work towards amending FASB Statement 140, Accounting for Transfer of Financial Assets and Extinguishment of Liabilities enables the banks to be paid promptly upon completion of a promissory note, and wet ink signature of the "alleged" borrower. (my emphasis)

d.    FAS For 5 provides for Annual Financial Statements

e.    FAS 95 created in 1987 when it was assumed that traditional financial institutions were the only acceptable vehicle to hold cash and cash equivalents and should serve as the authoritative source of standards for financial account and reporting and that FASB is that source."

8.    The promissory note falls under UCC Art. 3 as a negotiable instrument, once it is securitized, it falls under UCC Art 8 & 9 as a security. Plaintiff possess entitlement rights and possessory rights to the original note. . . it is negotiable.

9.    UCC-3-305 is about Plaintiff's right to recoupment. AMERICANWEST BANK is in receipt of our UCC Affidavit", which serves as a twenty (20) day "Notice." An Affidavit of service with the follow affidavits; Affidavit Notice of Removal, Affidavit Notice of Revocation Of Power Of Attorney, QuitClaim Deed, all filed in the Washington County Recorder's Office on May 29, 2009 Doc # 20090021104, 20090021105, 20090021106. These documents precipitate Plaintiff's right to the original amount of the mortgage, as well as all payments and interest. An un-rebutted Affidavit stands as truth in Commerce.

Plaintiff's filed Full Reconveyance of Property into the Washington County Recorder's Office on July 2, 2009 Doc # 20090025745 and a QuitClaim Deed on July 2, 2009 Doc # 20090025744.  (See exhibits included.)

10. UCC 3-306, is the claim Plaintiffs must make to apply the set-off from the account ledger. This is a mandatory action that Plaintiffs are now forced to file in order to effectuate our remedy to full possession rights to the property located at 1049 East Paiute Drive, Washington, Utah, 84780.  (See UCC-1 addendum)

11. Title 12 § 1813 (L)(1) states that when Plaintiff's deposited a promissory note, it became a cash item to the bank,  These notes are deposited into a transactional account and the credit goes to the accounts payable side of the ledger (assets) of the bank, but on the liability side, the note as been sold after it was monetized by our signature.  Plaintiffs are therefore the first funds transferor and have the right to either our note, or the cash equivalent.

12. Demand is also made for the Original Promissory Note, wet ink signature of Plaintiffs and any allonges where the promissory note has been transferred too.

13. In the event that Plaintiff does not here from Respondent(s) as provided by Utah law, Plaintiff will establish the presumption that Respondent(s) and other principals are in error and there is no other authority for supporting Respondent'(s) actions in ultra vires.


THEREFORE, the demand is justly made to enforcement of the production of the aforementioned documentation and accounting information.

**ATTACHMENT/EXHIBIT "A"**
Original Deed of Trust Record: 20080003806 - Dated 1/29/08

**GRANTOR(S)/TRUSTOR(S): KENTON C. BOWLER AND AMY C. BOWLER**
Original Loan #19000103073 APN W-IOE-4-57-A

1. **Effective immediately,** the undersigned Kenton C. Bowler and Amy C. Bowler forever removes/releases/discharges all: "Trustee(s), Successor Trustee(s), Substituted Trustee, Agent(s), Servicer(s), Assign(s), Transfer(s), known and unknown", including AMERICANWEST BANK, 9019 E. APPLEWAY BLVD. SPOKANE, WASHINGTON 99212, FAR WEST BANK, A DIVISION OF AMERICANWEST BANK, SPOKANE, WASHINGTON 99212, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") PO BOX 2026, FLINT, MI 48501-2026 existing under the laws of Delaware; and, Thereby removing and terminating the same from any/all duties and forever barring/estoppeling the aforesaid from any further appointments or assignments originally granted or contained within the Deeds of Trusts concerned herein.

2. **Effective immediately,** the undersigned Kenton C. Bowler and Amy C. Bowler forever Revokes/Cancels/Voids/Rescinds any/all duties, appointments, or assignments originally granted by Revocation of Power of Attorney, Authority, or otherwise granted/granting, and/or signs/signatures, assigned/assigning to any party(ies) including the alleged lender and successors, known and unknown including but not limited to: AMERICANWEST BANK, FAR WEST BANK. and MERS, addresses named above; Thereby removing and terminating the same from any/all duties and forever barring/estoppeling the aforesaid of any further appointments of any/all 'TRUSTEE(S)", "SUCCESSOR TRUSTEE(S)", "SUBSTITUTES", or "BENEFICIARY(S)".

## LET IT BE KNOWN

All above named "Trustee, Successor Trustee(s), Beneficiary(s)", or Assigns, Substitutes, known or unknown in clauses 1 and 2 above, are hereby directed to immediately **CEASE** and **DESIST** any further actions through said appointments/assignments granted in or from Record 20080003806, Dated 1/29/2008. **ANY** such continued or further action by <u>ANY</u> of the above named parties may result in legal actions against them.

**Be it further known,** GRANTOR(S)/TRUSTOR(S): KENTON C. BOWLER AND AMY C. BOWLER do hereby QUITCLAIM all aforementioned duty(s) and benefit(s) of "Trustee" and "Beneficiary" regarding original Deed of Trust NO.20080003806 to: Kenton C. Bowler and Amy C. Bowler.


_____

Kenton C. Bowler

_____

Amy C. Bowler



Division Of Corporations

# Acknowledgement of Filing

**File Number:**356307200804
**Old File Number:**N/A

**Record Date:**12-29-2008 14:39
**Lapse Date:**12-29-2013 14:39

**Type:**UCC
**Status:**ACTIVE

**Filer:**

GREG JOFRE STRADLING MR.
971 EAST COMANCHE CIRCLE
WASHINGTON,UT 84780 USA

**Collateral Description:**
Action: ADD
Description:
THE NAMED SECURED PARTY(IES) ARE THE LIVING, BREATHING, FLESH AND BLOOD SOUL(S) AND HEREBY
SECURE ALL RIGHT(S), TITLE(S), AND INTEREST(S) IN ABOVE NAMED DEBTOR(S) BY REGISTERING THE
COLLATERAL (AS LISTED COLLATERAL IN SECURITY AGREEMENT NO. SA-GJS/FLS-12292008)OR PENDING IN
THE COMMERCIAL REGISTRY OF: GREG JOFRE STRADLING (ORGANIZATION/TRADE NAME/TRADE MARK),STATE
OF UTAH, CERTIFICATE OF LIVE BIRTH, REGISTRARS NO. 868, STATE FILE NO. 13105, D.O.B.
9/21/1948; CERTIFICATE NO. F2209861, AND WIFE, FAY LOUISE (GIAUGUE)STRADLING
(ORGANIZATION/TRADE NAME/TRADE MARK),STATE OF UTAH, DEPARTMENT OF HEALTH, CERTIFICATE OF
LIVE BIRTH, REGISTRARS NO. 442, D.O.B. 6/10/49; STATE FILE NO. 49-008391, ANY OTHER TITLED
BIRTH DOCUMENT - WHETHER CITY, COUNTY, STATE, FEDERAL OR OTHER - EITHER ASCRIBED TO OR
DERIVED FROM THE NAME OF DEBTOR(S) OR BASED UPON THE ABOVE DESCRIBED CERTIFICATE(S) OF
BIRTH, ALL PROPERTY IS ACCEPTED FOR VALUE AND IS EXEMPT FROM LEVY, ADJUSTMENT OF THIS FILING
IS FROM HOUSE JOINT RESOLUTION 192 OF JUNE 05, 1933 AND UCC 1-104 AND 1-308. ALL PROCEEDS,
PRODUCTS, ACCOUNTS AND FIXTURES INCLUDING ORDER(S) THEREFROM ARE RELEASED TO THE DEBTOR(S)
CONTAINED WITH THE ABOVE LISTED SECURITY AGREEMENT. FOR VERIFIED COPY(IES) OF COMPLETE
SECURITY AGREEMENT CONTACT SECURED PARTY(IES).

**Debtor:**
GREG JOFRE STRADLING MR.
971 E COMANCHE CIRCLE
WASHINGTON,UT 84780 USA

**Debtor:**
FAY LOUISE STRADLING MRS.
971 E COMANCHE CIRCLE
WASHINGTON,UT 84780 USA

**Secured Party:**
GREG-JOFRE: STRADLING
971 E COMANCHE CIRCLE
WASHINGTON,UT 84780 USA

**Transaction Detail:**
Form Type:UCC 1 FILING STATEMENT
Effective Date:12-29-2008 14:39
Submitter Ref:NONE
Web Transaction Id:20081229-7139298-62695

Transaction Cost: $12.00
Receipt Number:777
Alt Designation:NONE

**Additional Description:**
FILING APPROVED - 0
THE DATA LISTED ABOVE IS A 'NON-CERTIFIED' RECORD.PLEASE TAKE THE TIME TO REVIEW ALL OF THE
INFORMATION.IF YOU FIND ANY DISCREPANCIES YOU MUST CONTACT THE DIVISION, AT NO COST, WITHIN
30 DAYS OF RECEIVING THIS ACKNOWLEDGEMENT.